CITY BANK FARMERS TRUST· COMPANY, as Trustee under Two Deeds of Trust, Dated August 15, 1919, Made by WILLIAM W. ASTOR, Respondent, *v.* J & J SLATER, INC., Appellant.

First Department, June 19, 1951.

*Edmond B. Butler* of counsel (*O'Connell & Butler,* attorneys), for appellant.

*Elmer J. Hoare* of counsel (*Mitchell, Capron, Marsh, Angulo & Cooney,* attorneys), for respondent.

CALLAHAN, J. The plaintiff as landlord sues to recover "additional rent" for store premises on Madison Avenue

occupied by the defendant under a long-term lease expiring on January 31, 1969. The defendant is alleged to be in default on payment for the nine-month period commencing July 1, 1949.

The lease was executed on June 16, 1948, after extended negotiations between the tenant and the then landlord. The plaintiff purchased the property from the former owner in December, 1948.

The action involves a construction of the " taxes " clause of the lease reading as follows: " 41. Tenant shall pay to Landlord as additional rent, commencing July 1, 1949, in monthly instalments in the same manner and at the same time as minimum rent hereunder, one-half of the excess of real estate taxes affecting the real property of which the demised premises form a part over and above the amount of such taxes for the fiscal year 1947-48."

Both parties urge that the aforesaid clause of the lease is unambiguous, but each contends for a different construction. In effect, the landlord claims that the lease contemplates taxes *as reduced* for the base year, and the tenant argues for taxes *as assessed*. The trial court properly took testimony as to the circumstances and negotiations attending the execution of the lease.

The rental payments based on increased taxes were not to commence until July 1, 1949, under the provisions of the lease. Thereafter the tenant was to pay in monthly installments in the same manner and *at the same time* as rent one half of the excess of taxes (which, of course, meant current taxes) affecting the property over the amount of the taxes for the " fiscal year 1947-48." This means the city's fiscal year commencing July 1, 1947. While taxes are assessed as of January in each year, they are collected for the ensuing fiscal year.

It happens that proceedings to review the 1947-48 assessments were pending at the time of execution of the lease. But this fact was not made known by the landlord to the tenant. Any inquiry by the latter at the tax office would not have disclosed the pendency of such proceedings, but only confirmed the fact that the taxes for the base year were determined on an assessment of $815,000. Shortly after execution of the lease, however, the 1947-48 assessment was reduced to $655,000 as a result of negotiations and settlement with the tax authorities. For the year 1949-50, after the plaintiff had purchased the property subject to the lease, the assessed valuation was increased to $1,150,000. No proceeding was brought to review this assessment. The defendant, however, has been held liable

for one half the difference between the *reduced* taxes for 1947-48 and the taxes as *levied* for 1949-50.

We think that the trial court erred in this holding. It is our opinion that the language of the lease indicates a reference to taxes as assessed for the " fiscal year 1947-48 " adopted as the base period. The parties to the lease evidently intended to deal in terms of known taxes for the base year, and not some unknown figure resulting from legal proceedings of which the tenant had no knowledge at the time of entering into the lease. This construction finds support in the oral proof as to what occurred when the " taxes " clause was discussed during negotiations for the lease. The parties talked about the assessed valuation of $815,000 on the property for the fiscal year 1947-48 and the fact. that the assessment for 1948-49 was at a higher figure. The landlord refused the tenant's request that the later year with its higher assessment be used as the base year. This indicates an intention of the parties to negotiate on terms of taxes as levied or assessed in the base year, and not on the basis of some unknown factor of taxes as reduced by certiorari to review the assessment.

Accordingly, we find on the facts in this case that the parties contracted on the basis of the known assessment at the time of entering into the lease, and that the amount of taxes which would result from such an assessment is what they understood and meant by " taxes for the fiscal year 1947-48." Undoubtedly, monthly payments of excess taxes as additional rent for subsequent years would be calculated on the basis of the current assessment. To compute each month after July 1, 1949, an installment of rent representing the increase of current taxes over taxes for the base year would mean that the parties would have to deal with known or fixed sums, if a precise amount were to be added to the minimum rent and payable *at the same time*. It would not be possible to compute the monthly " tax " increment *at the same time* as current rent, if there had to be a delay until completion of proceedings to review current taxes as determined by assessment. We need not go further and consider whether an adjustment might be expected if the taxes for subsequent years were reduced by certiorari proceedings.

The judgment appealed from should be accordingly modified by limiting the defendant's liability for additional rent to one half of the difference between the taxes levied and paid at the time of entering into the lease on June 16, 1948, and the taxes levied and paid for the year 1949-50.

PECK, P. J., GLENNON and COHN, JJ., concur; SHIENTAG, dissents and votes to affirm.

Judgment modified by limiting the defendant's liability for additional rent to one half of the difference between the taxes levied and paid at the time of entering into the lease on June 16, 1948, and the taxes levied and paid for the year 1949-50. Settle order on notice.