Robert J. Trainor, J.
This is an action for a declaratory judgment, brought by 12 tenants of a shopping center against their landlord .and successors in interest, to determine which of two years is the actual base tax year upon which to predicate increased rents resulting from an increase in real estate taxes assessed against the landlord, proportionate shares of which are assumed by the tenants under the provisions of their respective leases.
In June of 1964, an assessment roll was filed in the Town of Eastchester for the 1965 taxes on a “fully assessed ”, completed shopping center, in the amount of $792,550. The same assessment w.as filed during June, 1965' for the 1966 taxes. These two assessments were challenged by the then owners by the institution of tax certiorari proceedings and the proceedings were subsequently compromised by a stipulation which reduced the 1964 assessment roll and tax levy to $592,550- and discontinued the proceedings with respect to the 1965 assessment roll and consented that it remain at the higher figure. The stipulation was embodied in .an order of this court made and entered on November 23, 1966. None of the tenants was given notice of the institution of the certiorari reduction proceedings or of the subsequent ¡settlement.
As a result of the compromised proceedings, the landlord asserts that the “ base year ” for tax liability is the 1964 assessment for 1965 taxes, as reduced by stipulation and order, which would render certain of the plaintiffs-tenants liable for increases during the subsequent years of higher assessment.
The lease clauses, contained in the exhibits submitted at trial, vary in several instances; the two basic tax clauses having, in some instances, been altered by interlineation and initialed by both parties to the agreement.
The leases of the plaintiffs, Dorothy 'Stein Shops, Inc., the Westchester Woman, Midchester Kosher Meats, Inc., Wallach Sons, Flowers and Fancies, Inc., and Valtina Products Corp., provide that if, in any year, real estate taxes ‘ ‘ shall be increased over and above Landlord’s basic tax liability (as hereinafter defined) for the tax year immediately succeeding *124 the tax year in which Tenant takes occupancy ” tenant agrees to pay a proportionate share of such increase. The landlord’s basic tax liability is then defined as “ a sum equal to the lesser of the amount of taxes as assessed or said taxes as reduced by appropriate proceedings * * * in the tax year immediately subsequent to the tax year in which Tenant takes occupancy ” (emphasis supplied). Since all of the above-named tenants took possession in the years 1963 and 1964, they would be liable for a proportionate share of any increase in taxes for the subsequent tax year, i.e., 1964 assessment for the year 1965, “ as reduced by appropriate proceedings ”, and inasmuch as the taxes for that year were reduced by appropriate proceedings to the sum of $592,550, the tenants above named are liable to pay their share of any increase above that sum, because there is nothing ambiguous about the tax provisions of their leases. (Schoonmaker v. Hoyt, 148 N. Y. 425; Sandberg v. Reilly, 223 App. Div. 57.) Implicit in its language is the expectation and anticipation that the first full assessment for taxes placed upon the property would be challenged and that appropriate proceedings would be taken seeking a reduction. It is certain, therefore, that as to the tenants above named, the 1964 assessment roll for 1965 taxes, as reduced, is the “ base year ”, and their causes of action numbered (Second, Third, Fifth, Seventh, Eighth and Eleventh are dismissed.
The lease of the tenant-plaintiff George Post, Ltd., provides that the tenant will pay a proportionate share of tax increases over and above landlord’s basic tax liability “ for the tax year immediately succeeding the first tax year in which the taxes as assessed include ” certain improvements occupied by the tenant. The proof shows that a partial assessment was levied on June 1, 1963 for 1964 taxes, covering improvements already completed, which would include the premises occupied by the plaintiff Post, who, it was agreed, took occupancy in July of 1963. Therefore, ‘ ‘ the tax year immediately succeeding the first tax year ” would be the 1964 assessment for 1965 taxes. And, since the tenant agreed to pay its proportionate share of any increase, and since the lease further provides that the landlord’s basic tax liability “ shall be a sum equal to the lesser of the amount of taxes as assessed or said taxes as reduced by appropriate proceedings ” (emphasis supplied), the cause of action of the plaintiff, George Post, Ltd., numbered Ninth, is dismissed.
■ The leases of the plaintiffs-tenants Fred Lana Corporation, Eastchester Confectioners, Inc., Eastchester Bootery, Inc., and 715 White Plains Road Corp., provide that those tenants will *125 pay “ any increase over those for the fiscal year during which the Shopping Center has been first fully assessed ”. Whether by accident or design, the tax clauses in these leases do not provide (as do the others before mentioned) that the landlord’s- basic tax liability shall be “ a sum equal to the lesser of the amount of taxes as assessed or said taxes as reduced by appropriate proceedings ” (emphasis supplied). Authority need not be cited for the proposition that a written instrument will be construed most strictly against the party who prepared it where two constructions are possible. The failure to include the italicized language (which was used consistently in the leases of the six other tenants in the same shopping center) has some significance and it is deemed to militate against the landlord and in favor of these tenants. “ The rule is well settled that a court may not, under the guise of interpretation, make a new contract for the parties or change the words of a written contract so as to make it express the real intention of the parties if to do so would contradict the clearly expressed language of the contract. * * * we ‘ concern ourselves with what the parties intended, but only to the extent that they evidenced what they intended by what they wrote’.” (Rodolits v. Neptune Paper Prods., 22 N Y 2d 383, 386-387.)
Furthermore, although the courts of this State have held that a tenant who is obligated to pay the ‘ ‘ entire taxes ” is an “ aggrieved party ” with respect to tax certiorari proceedings (Matter of Burke, 62 N. Y. 224; Matter of McLean’s Dept. Stores v. Commissioner of Assessment, 2 A D 2d 98), there appears to be no law permitting intervention by a tenant liable for a proportionate share only of increased taxes, and it seems unlikely that such an individual would have 1 ‘ standing ’ ’ to intervene in a proceeding or commence one in his own right. Assume a property with 100 or more tenants each obligated to pay a pioportionate tax increase — could each one protest the assessment against the entire property? Furthermore, the portions of the leases before the court do not authorize the tenant, in any way, to challenge real estate tax assessments, or require, the landlord to do so on their behalf.
Extensive research has disclosed that very little decisional law exists which would aid the court in its interpretation of the clauses in question. The leading case, which has apparently not been cited subsequent to its affirmance in the Court of Appeals, is City Bank Farmers Trust Co. v. Slater, Inc. (278 App. Div. 366, affd. 303 N. Y. 971). In that case, the Appellate Division, in reversing the trial court, held that the base assessment prior to its reduction by certiorari proceedings was to be *126 the basis for determining a subsequent increase in taxes to be borne by the tenant. The court in that case reasoned that the lease negotiations between the parties were based upon a known figure, which was contemplated by the parties, rather than upon a speculative assessment which would result from a court decreed reduction.
Although the facts in the instant case vary, the equities are substantially similar. Here, in most instances, negotiations were consummated and the leases executed prior to the completion of the shopping center. There was no established tax figure, since the final assessment roll had yet to be filed. Nevertheless, it must be assumed, in the absence of proof to the contrary, that the assessment roll as established, not as reduced, would operate to establish a base. This is especially apparent in view of the other tax clauses in different leases, which contemplated a reduction of the assessment, the instant leases being silent on the subject.
With respect to the negotiations between the owners and the town which resulted in the stipulation and order reducing the 1965 taxes from $792,550 to $592,550, the testimony of Harry J. Hill, Esq., the Town Attorney, who approved the stipulation, is interesting. When asked what was the basis for his recommending the settlement, Mr. Hill testified:
“ A. The first protest was filed affecting the 1964 assessment for the 1965 tax. Then there was a protest filed for the 1965 assessment affecting the 1966 tax. In the meanwhile, the matter was placed on the calendar for trial and Mr. Tomback, representing the Universal Shopping Center, Inc., and myself, the .Supervisor and the .assessor- — -there may have been others; I don’t remember — discussed the matter of a settlement after •it had been referred to a Referee for hearing. The assessor stated that the full value of the property on the 1964 roll for the 1965 tax was $792,550. This same amount was to appear on the ’66 roll for the ’67 tax. The claim was made, as -1 remember it, that the full potential of rental value of the property hadn’t .been reached at the time the 1964 assessment was fixed. * * * As I said, we were faced with the proposition that the premises hadn’t reached their full potential rental income.
the court: Can you explain to me, Judge, what that means?
“ the witness: I don’t know what it means. I mean that’s what they claimed, that the property wasn’t producing the income that it was supposed to produce when it was fully completed and fully rented * # *
*127 “ the court: Fully completed or fully rented? There is a difference.
“ the witness: I couldn’t tell you whether it was fully completed or not fully completed. According to the tax records, it was fully completed that time. Personally, I don’t know whether it was or not. I only know what the records say. * * # In addition to that, they agreed that if we would give them this concession on the 1964 — 65 tax that was shown in the stipulation * * *.
“ A. (Continuing) It was agreed that if they were given this concession for the 1964-65 tax that they would not contest the assessment of $792,550 for the 1965 assessment for 1966 tax, .and they further agreed that they would not contest the assessment of $792,550 for the 1966 assessment for the 1967 tax-, and it was subsequently taken up with the Town Board, and the Town Board and the Supervisor and myself and the assessor decided, as Judge Taylor used to say, ‘ A man could always buy his peace ’, and that applies to a town or corporation or anything else. So in this case we bought our peace. That’s the whole thing, why we made the settlement.” (Emphasis supplied.)
Although this stipulation was valid and binding upon the parties to it, and undoubtedly beneficial to them, the onus was cast upon the plaintiffs in the First, Fourth, Tenth and Twelfth (added) causes of action, who were committed by the owners, without their knowledge or consent, to pay a prorata proportion of higher taxes in return for a concession given to the owners, not to them, on the 1965 taxes. It is obvious that the complaint as to the 1965 tax w.as not that it was not the correct value, but, rather, that until the stores were fully rented, the tax would be burdensome on the owner, so why not shift the burden, or a portion of it, to the tenants ?
In view of the lease terminology; the tax review proceedings (without notice to these tenants); and the compromise which reduced the assessment for 1965, without reducing the 1966 or 1967 assessment (although it appears that there was no substantial change in the condition of the property other than it being more fully rented), the landlord, who admitted the subsequent years’ assessments to be correct, should not benefit at the expense of the unsuspecting tenants.
Judgment is awarded to the plaintiffs Fred Lana Corporation, Eastchester Confectioners Inc., Eastchester Bootery, Inc., and 715 White Plains Bo ad Corp., on the First, Fourth, Tenth and Twelfth (added) causes of action.
The tax provision in the lease of the tenant-plaintiff, Eastchester Delicatessen, Inc., differs from that in the other tenants’ *128 leases and provides that the tenant will pay a share of any tax increase “ over those for the second fiscal year during which the Shopping Center has been fully assessed ” (emphasis supplied). The proof established conclusively that the first full assessment w.as the one for 1965 taxes and the second full assessment year was the one for 1966 taxes. This plaintiff then would only be liable for its prorata share of any increase in taxes over those for the year 1966. I find in favor of Eastchester Delicatessen, Inc., on its cause of action.