OPINION OF THE COURT
Leah R. Marks, J.
In this case, the New York City Department of Social Services is petitioning the court for the approval of the transfer of the custody and care of David R. to the commissioner under a "Voluntary Placement Agreement” signed by the maternal grandmother on September 13, 1978.
The agreement is the standard contract offered by the New York City Department of Social Services to persons who are not parents or guardians who allegedly volunteer to place a child in care.
The case was tried on July 16, 1979. The petitioner, each parent, and the maternal grandmother were represented by separate counsel. An interpreter was appointed to assist the maternal grandmother. The child had been placed allegedly because of the parents’ inability to cope with their responsibility and the grandmother’s inability to care for the child who was under two months old, and about to be released from the hospital. The signing of the document, which is conceded, took place under the following circumstances:
On September 13, 1978, a department agent witnessed the signature on the one and one-half page agreement in English of the maternal grandmother who allegedly volunteered to place the child. The maternal grandmother is fluent only in Spanish. Although she had come to the department’s office *43 with a relative who was fluent in English, the department’s agent took her to a separate room for the signing. No interpreter was present. No inquiry took place as to whether the grandmother had custody of the child who was hospitalized at the time.
The department agent allegedly explained the one and one-half page document to the grandmother. There was almost no discussion of the meaning of the agreement. However, the grandmother supplied the names and addresses of the parents which were correctly entered into the document. Each parent had been visiting the child regularly, but no effort was made to contact them before accepting the placement.
This proceeding is brought under section 358-a of the Social Services Law. The legislative history of that section indicates that the main reason for giving the Family Court jurisdiction over voluntary placement agreements is to guarantee Federal aid for expenditures made by social services districts for the care and maintenance of dependent children in foster care who would, under other circumstances, be eligible for aid to dependent children. Under that section, if Federal aid is to be forthcoming, the court must find that it would be contrary to the welfare of the child for the child to live in the home of the parent or guardian. However, before the court can consider the needs of the child it must decide if a real contract exists under section 384-a of the Social Services Law.
The issues in dispute are whether the grandmother had the requisite understanding or right to place the child that would permit the court to hold that the agreement in question is a binding contract and whether, even if a binding contract existed, the department had a right to keep the child after the parents asked for the child’s return.
THE ESSENTIAL TERMS OF THIS CONTRACT
This contract is a one and one-half page, single-spaced document, used regularly by the Department of Social Services for a person entrusted with the care of a child. So many matters are mentioned within the contract, some of which are clearly not essential to the contract, that it is necessary for the court to decide what matters constitute the essential terms that must be understood if the person signing is to be held to have given voluntary, informed consent as a party to a contract.
*44 The court finds that the following are the essential terms and conditions that must be understood by both parties signing this agreement: (1) The person placing the child must have some rights as custodian to place the child. (2) The child will live away from home. (3) The Commissioner of Social Services will have full power over the child’s life in the future, including the powers to choose the child’s residence as well as the kinds of education, medical and other care that the child will receive. (4) The child will be returned upon request of the parent or legal guardian who is not bound by this contract.[1] (5) The commissioner has the right to refuse to return the child to the person placing the child, and the person will have to go to court for the return in that case. (6) This document is a legal contract.
An informed custodian may amend the form contract with the department’s approval, but no amendments took place in this case.
THE UNDERSTANDING OF THESE ESSENTIAL TERMS
(1) The grandmother may have thought she had custody of the child. The department did not investigate the situation. However, it was known that the child was in a hospital, and the parents were visiting regularly at the time of the signing. The department should have known from those facts that the grandmother was unlikely to be a proper party to a placement agreement.
(2) The parties fully understood that the child would live away from home.
(3) Although the contract says, "I grant permission to the Commissioner of Social Services to place the child in a child care setting that he determines to be suitable for this child’s care,” the department agent did not discuss the commissioner’s power in relation to the child’s education, medical and other care. Nothing in the testimony by either side indicates that this essential understanding was present.
(4) Even the petitioner failed to understand that the right of the parents to immediate return of their child was not af *45 fected by this contract as proven by the failure of the petitioner to return the child upon demand.
(5) The contract says, "If the Commissioner of Social Services concludes after investigation that return of the child to the care of the person who placed the child would be contrary to the child’s best interests, he shall so notify the person who placed the child within twenty (20) days of the date of the request for return and such person may petition the Family Court for return”. The grandmother could not have understood this because the facts surrounding the signing deprived her of any chance for adequate explanation. Even a reading of the contract in English by those familiar with the language might not awaken the reader to the fact that the commissioner has such tremendous power.
(6) Although those familiar with the English language, probably those somewhat sophisticated, know that the word "agreement” in documents is synonymous with "contract”, this Spanish-speaking woman cannot be held to have such knowledge. Nowhere in this "Voluntary Placement Agreement by Person Entrusted with Care of Child” is the word "contract” used. The word "agreement” is used four times exclusive of the title. In addition, the facts of the signing deprived her of any adequate explanation.
THERE IS NO CONTRACT IN THIS CASE
A. THE GRANDMOTHER’S RIGHT TO CONTRACT
 The facts show the grandmother had no right to place the child. She may have believed full responsibility for the child was about to be given her, but she did not have that responsibility yet. The department knew that from the facts or ought to have known it. There can be no contract where one party is without authority and the other ought to have known it.
B. THE LANGUAGE PROBLEM
 Even if the grandmother were a proper party, if the signer is ignorant of the language of the writing, and the contents thereof are misread or misrepresented to him by the other party, unless the signer be negligent, the writing is void. (Pimpinello v Swift & Co., 253 NY 159; National Bank of North Amer. v Chu, 64 AD2d 573; Nadal v Childs Securities Corp., 18 AD2d 375, 377; Albarello v Meier, 5 Misc 2d 193, 195; City Bank Farmers Trust Co. v B. W. Constr. Corp., 19 *46 Misc 2d 593.) In this case, no one discussed some of the essential terms of the agreement.
The facts of the case, most significantly the failure to permit the English-speaking companion to remain with the grandmother, result in a finding of deliberate misrepresentation on the part of the petitioner. We are dealing here with a situation in which the grandmother was ignorant of the language of a document on which her signature was placed, although a Spanish version was available.
There can be no finding of negligence on the part of the grandmother in failing to obtain legal assistance or otherwise obtaining full information about the document. Given the facts of the case, she was never permitted to obtain help as a result of the methods used in obtaining her signature. This instrument, contrary to what one might assume from the procedures used in executing the document, is a complicated document presenting difficulties even for those trained in reading such instruments. This may be proven by the fact that the petitioner also seems ignorant of the meaning of the agreement, having failed to return the child to the parents, neither of whom was a party to the placement or could legally be bound thereby under either the statute, common law or common sense.
C. THERE IS NO CONTRACT WHERE ONE PARTY KNEW OR HAD REASON TO KNOW THAT THE OTHER IS LABORING UNDER A
MISTAKE
Here we have printed words on a form made out by the petitioner. Thus, it is the commissioner alone who chose the terms, including the very different procedure for returning a child to a custodian.
 A written instrument prepared by one party to the contract should be strictly construed against that party.[2] That factor alone may be so important that the resulting doubts as *47 to understanding may lead to the conclusion that no contract exists. Of course, for this conclusion to be reached, the party choosing the words must have reason to know that the other was laboring under a mistake. In this case, where the grandmother spoke only Spanish, where the department’s agent did not use an official interpreter and denied access to the grandmother’s own interpreter, the department must be held to be on notice that there was good reason to believe that the grandmother was laboring under a mistake.
Still, proof of mistake must be strong and convincing. In this case, it has been shown that the grandmother’s failure to understand seems to have been caused by the petitioner purposely rather than innocently; as a result there is no contract. (United States v Jones, 176 F2d 278, 285; WPC Enterprises v United States, 323 F2d 874; Hester v New Amsterdam Cas. Co., 268 F Supp 623.)
THE BEST INTERESTS OF THE CHILD
The law states that where a contract exists, the court should grant the petition only if the best interests of the child were served by placement at the time of the execution. There is no dispute in this case that the petitioner failed to contact either available parent to determine whether placement should have been accepted at the time the alleged contract was signed. In fact, all evidence indicates that if the petitioner had attempted to talk with either parent to find out whether other plans were feasible, the child would never have been placed and no agreement ever would have been signed. There is no evidence that placement was in the best interests of the child.
The court cannot uphold such alleged agreements merely because the State will lose reimbursement from the Federal Government if there is no legal contract. No matter how desirable such reimbursement may be in the State’s present financial condition, we cannot encourage a procedure under which a grandmother is permitted to place a child without having custody and without full understanding of the consequences were she the proper person to place.
Such agreements can fulfill a valid public purpose for children where the parties have the right to contract and are thoroughly advised as to the essential terms of the agreement, and where the child needs services obtainable only away from home. But, without that clarity, approval of such an agree *48 ment can only mean the taking of children without due process. Such approval can only encourage workers to persuade adults to place children instead of offering them needed services or investigating the facts at all. In this case a child has been kept in placement illegally from the signing of the agreement on September 13, 1978 until this trial on July 16, 1979. Even under the terms of the contract, holding the child was unconscionable. The petition is hereby dismissed.[3]

. Subdivision 1 of section 384-a of the Social Services Law says "[s]uch transfer by a person who is not the child’s parent or guardian shall not affect the rights or obligations of the parents or guardian”. (See, also, Goldenberg v Bartell Broadcasting Corp., 47 Misc 2d 105.)

. Cf. Stuart v Franklin Life Ins. Co. (165 F2d 965 [the court held that where the terms of an offer by a prospective purchaser in a real estate transaction appeared on a printed form prepared by the vendor, the terms were to be construed most strongly against the vendor]); WPC Enterprises v United States (323 F2d 874 [the court held that the government, as author of the defect in drafting which led the contractor to a reasonable supposition, was under an obligation to clarify the contract and when it did not do so was liable to plaintiff for any damages resulting]); Stein Shops v Roscon Realty (59 Misc 2d 122 [the court held that the lessee was not liable for increase in rents due to the landlord’s tax liability, since the tax clause in the lease failed to specify or define the formula for the landlord’s tax liability]).

. In fact, the petition was dismissed on July 16, 1979, to avoid further passage of time before return of the child to the parents.