OPINION OF THE COURT
Ruth Jane Zuckerman, J.
The Commissioner of Social Services (hereinafter the Commissioner) filed this petition, pursuant to section 392 of the Social Services Law, to review the foster care status of George O. On June 24,1977, the natural mother (hereinafter respondent) signed a voluntary placement agreement transferring George’s care and custody to the Commissioner, and requesting placement for him until August 31, 1977. Subsequent to the signing of the June 24, 1977 agreement, as well as at various times prior thereto, the child has been in foster care under the supervision of the New York Foundling Hospital (hereinafter the Agency).[1] *783 The court now has before it respondent’s motion[2] to dismiss the petition, and to return the child to her forthwith, on the ground that the court lacks subject matter jurisdiction in this proceeding.
The uncontroverted, albeit somewhat complicated, facts and circumstances surrounding respondent’s motion to dismiss are as follows:
George O., the child whose foster care status is the subject of these proceedings, was born on October 16,1970. On April 16, 1975, at the behest of his maternal grandmother, George was placed in foster care with the Commissioner, on an emergency basis. The Commissioner, in turn, then placed him in one of the Agency’s licensed foster homes. On August 20, 1975, respondent signed an agreement placing the child in foster care for an indefinite period.[3] However, only a few days later, on August 26, 1975, he was discharged from foster care — with respondent’s approval — to the care of his half-sister’s paternal grandmother, with whom he remained until December 22, 1976. On the latter date, the child was returned to foster care and was again placed in one of the Agency’s licensed foster homes, where he has resided ever since.
On June 24, 1977, respondent, whose whereabouts were unknown between December 22, 1976 and sometime in May of 1977, signed another voluntary placement agreement. This second agreement, which transferred the child’s care and custody to the Commissioner, offered a parent two *784 options — (1) placement for an indefinite period of time, or (2) placement until a day certain or until “a specific happening or event takes place.” Respondent selected the second option, and specified in the agreement that she “want[ed] * * * [her] child to be placed with the Commissioner of Social Services until August 31, 1977”.[4] At no time between June 24, 1977 and the filing of the present petition in October of 1979 did respondent ever notify the Agency or the Commissioner — either orally or in writing — that she wished to have the child returned to her care.[5]
Although the child continued in foster care for more than 30 days after the June 24,1977 agreement was signed, the Commissioner never filed a petition, pursuant to section 358-a of the Social Services Law, for judicial approval of that agreement.[6]
On November 27, 1978, the Commissioner filed a petition pursuant to section 392 of the Social Services Law, for a review of George’s foster care status. Because the petition alleged that respondent’s whereabouts were unknown, service solely on the Agency and the foster parents was authorized. Following a hearing held on January 10,1979, the court (Schwartz, J.) specifically found that respondent’s whereabouts were unknown, ordered that foster care be continued, and directed that the Commissioner file a petition for a second review of the child’s foster care status on or about July 1, 1979. On October 15,1979, the instant petition for a second foster care review was filed.
*785 Respondent’s main arguments in support of her motion to dismiss the present proceedings for lack of subject matter jurisdiction depend, at bottom, upon the effect of the provision in the June 24, 1977 agreement specifying August 31, 1977 as the date for the child’s return to her care. More specifically, respondent contends that the child’s current placement automatically terminated on August 31, 1977; that as of August 31, 1977, respondent had an absolute right to the return of her child, absent a court order entered pursuant to section 384-a (subd 2, par [a]), or proof that she was “unavailable” or “incapacitated”; that respondent at all times continued to enjoy that right, notwithstanding the fact that she made no demand for the return of the child until after the present proceeding was begun; and that the court’s jurisdiction over the child’s foster care status expired on August 31,1977.[7] As a subsidiary point, respondent also argues that the placement in the instant case was “illegal” even prior to August 31,1977 by reason of the fact that the agreement signed by her on June 24,1977 was never approved pursuant to section 358-a of the Social Services Law, and that this court’s jurisdiction, pursuant to section 392, cannot be grounded upon such an “illegal” placement.
i. The Effect on the Court’s Subject Matter Jurisdiction of the Commissioner’s Failure to Petition for Judicial Approval of the Voluntary Placement Agreement.
As was previously noted, respondent contends that because no petition was ever filed pursuant to section 358-a *786 of the Social Services Law for judicial approval of the June 24, 1977 placement agreement, the child’s entire foster care placement under that agreement was illegal and thus cannot provide a valid jurisdictipnal basis for this court’s section 392 review of his foster care status.[8] Although this lapse on the part of the Commissioner or the Agency, or both, is deplorable,[9] it is clear, for the reasons set forth below, that it has no effect upon the court’s subject matter jurisdiction.
Initially, it should be noted that section 392, which is the source of this court’s broad jurisdiction to review the status of children who have been in foster care for an extended period, was enacted in 1971.[10] It was not, however, until 1973 that the Legislature, in enacting the original version of section 358-a of the Social Services Law,* [11] established for the first time the requirement of judicial approval of agreements transferring care and custody of children to a social services official.[12] Since it is clear that the grant of subject matter jurisdiction pursuant to section 392 preceded the enactment of section 358-a, the question that arises is whether enactment of the latter statute expressly or by implication imposed an additional limitation upon or condition precedent to the court’s subject matter jurisdiction in section 392 proceedings.
No such express or implied limitation on the court’s jurisdiction is to be found in the provisions of section 358-a, 392, or 384-a of the Social Services Law. Indeed such implications as can be drawn from the language of these provisions, as well as from the legislative history of section *787 358-a, and the policy underlying section 392, are contrary to that for which respondent argues.
With respect to section 358-a, it is clear that under that provision as originally enacted, “the main reason for giving the Family Court jurisdiction over voluntary placement agreements [was] to guarantee Federal aid for expenditures made by social services districts for the care and maintenance of dependent children * * * who would, under other circumstances, be eligible for aid to dependent children.” (Matter of David R., 101 Misc 2d 41,43.)[13] It is, of course, true that the validity of a placement instrument and the propriety of a particular placement are also subject to examination in a section 358-a proceeding,[14] and that it is therefore important that petitions for approval of voluntary placement agreements be filed promptly. The fact remains, however, that the sanction for failure to file promptly is a fiscal one,[15] and that pursuant to section 358-a, a petition cannot be either dismissed or denied on the merits simply because it was not commenced in a timely fashion. On the contrary, pursuant to the express language of subdivision (1) of section 358-a, the court is required to hear and determine even those petitions that have not been filed within the period specified by statute.
Subdivision (3) of section 358-a also makes clear that if the court makes certain findings, the result of the judicial proceeding will be to “approve [the] instrument and the transfer of the * * * care and custody of [the] child to [the] social services official”. Although an order transferring care and custody will then be entered, the actual transfer *788 of care and custody to a social services official flows not from the court’s order, but rather, pursuant to section 384-a of the Social Services Law, from the agreement itself.[16] The court order was, however, necessary to ensure the State’s eligibility for Federal reimbursement for voluntary foster care placements. As was previously noted, it was not until 1978 that section 358-a was amended so as to cover all voluntary placements, rather than only those involving Aid to Families with Dependent Children (AFDC) families for which Federal reimbursement was available.[17]
The implications to be gleaned from the text of section 392 and its legislative history also make clear that an order entered pursuant to section 358-a is not a jurisdictional prerequisite to the present proceeding. Section 392, which was enacted in an effort to ensure that children once placed in foster care were not forgotten, imposes no requirement that the petitioner allege and prove that a court order has been entered pursuant to section 358-a. Instead, subdivision 2 of section 392 requires that the petition for foster care review be filed, “together with a copy, if any, of the placement instrument” (emphasis added), after a child has been in foster care for a period of 18 months. From this, it is clear that ordinarily, the placement instrument — but not a court order entered pursuant to section 358-a — is deemed a necessary adjunct to a petition in a foster care review proceeding, and that the absence of such court order in no way precludes the court’s exercise of jurisdiction under section 392.
*789 n. The Effect on the Court’s Subject Matter Jurisdiction of Respondent’s Designation in the Voluntary Placement Agreement of a Specific Date for the Child’s Return to Respondent’s Care and Custody.
In addressing respondent’s contentions as to the legality of the child’s placement subsequent to August 31,1977, the logical starting place is subdivision 2 of section 384-a of the Social Services Law, which together with the agreement signed by respondent, provides the legal framework for the child’s placement.
Section 384-a (subd 2, par [a]), in pertinent part, reads as follows: “If the instrument provides that the child is to be returned by the authorized agency on a date certain or upon the occurrence of an identifiable event, such agency shall return such child at such time unless such action would be contrary to court order entered at any time prior to such date or event or within ten days thereafter pursuant to section three hundred eighty-four-b or section three hundred ninety-two of this chapter or article six or article ten of the family court act or unless and so long as the parent or guardian is unavailable or incapacitated to receive the child.” (Emphasis supplied.)[18] In addition, insofar as is relevant here, subdivision (7) of section 358-a of the Social Services Law provides that, “If an instrument provides for the return of the care and custody of a child by the social services official * * * to the parent, parents or guardian upon any terms and conditions or at any time, the social services official * * * shall comply with such terms of such instrument without further court order * * * If an instrument provides for the return of the care and custody of a child by the social services official * * * without fixing a definite date for such return, or if the social services official * * * shall fail to return a child to the care and custody of his parent, parents or guardian in accordance with the terms of the instrument, the parent, parents, or guardian may seek such care and custody by *790 petition for return of such child and order to show cause in such proceeding or by writ of habeas corpus in the supreme court”.
In similar, though not identical terms, the agreement signed by respondent provides, insofar as is relevant here, as follows:
“I * * * want my child to be placed with the Commissioner of Social Services until 8/31/77 or
(date)
until ......................................
(A specific happening or event takes place)
at which time my child shall be returned, unless this would be contrary to a Court Order entered prior to such date or specific happening or event, or within ten days after such date or the occurrence of such specific happening or event.
It is further understood that such care shall continue as long as I am unavailable, incapacitated, or unable to receive the child and the Commissioner of Social Services will retain the care and custody of the child, until I notify the agency caring for my child that I * * * am able to accept the child. The child must then be returned to me within twenty days after receipt of my request unless such action would be contrary to a Court Order entered at any time prior to the end of such twenty-day period.” (Emphasis supplied.)[19]
In the instant case, it is undisputed that no court order precluding the return of the child to respondent was entered either prior to August 31, 1977 or within 10 days thereafter.[20] The above-quoted provisions of both the vol *791 untary placement agreement and section 384-a (subd 2, par [a]) make clear, however, that even in the absence of such court order, the return of the child on the date specified is not automatic. Instead, under both the statute and the agreement, the Commissioner will retain care and custody of the child if the parent is “unavailable or incapacitated” to receive the child.[21] In addition, under the terms of the agreement, care and custody may be retained by the Commissioner if the parent is “unable” to receive the child.[22] Thus it is clear from the provisions of the statute as well as those contained in the agreement, that the court must reject respondent’s contention that she had an absolute and automatic right to the return of the child on and after August 31, 1977.
The remaining question is whether, where respondent never requested the return of the child at any time prior to the commencement of the section 392 proceeding, the court’s subject matter jurisdiction in such proceeding nonetheless depends upon preliminary proof by the Agency or the Commissioner that respondent was unavailable or incapacitated to receive the child on the date specified in the agreement. Neither the language of section 392 and subdivision 2 of section 384-a nor the placement ágreement itself directly provides an answer to this question, and no reported judicial decisions that are dispositive of this issue have been found. However, when the nature and effect of objections to subject matter jurisdiction in the present context are explored, and the relevant provisions of the Social Services Law examined, it is clear, for the reasons set forth below, that in the facts and circumstances of this case, the court has subject matter jurisdiction under sec *792 tion 392, irrespective of whether petitioner establishes that respondent was unavailable or incapacitated to receive the child on the date specified in the agreement.
It is well-settled that the Family Court is a court of limited jurisdiction, and as such, has only such jurisdiction and powers as are expressly granted to it by the Constitution and laws of the State. (Borkowski v Borkowski, 38 AD2d 752.) Unlike defects in in personam jurisdiction or venue, which may easily be waived, defects in the court’s subject matter jurisdiction can neither be cured by the parties’ consent, nor waived. (See Matter of Palmer v Brown, 28 Misc 2d 642; see, also, 4 Weinstein-Korn-Miller, NY Civ Prac, pars 3211.09, 3211.10.) It is thus often said that, “a judgment rendered without subject matter jurisdiction is void, and that the defect may be raised at any time and may not be waived”. (Lacks v Lacks, 41 NY2d 71, 75.) Moreover, even if the parties themselves do not raise any objections to subject matter jurisdiction, the court may, on its own motion, “at any time, when its attention is called to the facts, refuse to proceed further and dismiss the action.” (Robinson v Oceanic Steam Nav. Co., 112 NY 315, 324.)[23] Because, however, of the serious consequences that flow from a determination that the court lacks subject matter jurisdiction, care must be taken lest objections which are more properly addressed to the merits of petitioner’s cause of action be improperly categorized as involving defects in subject matter jurisdiction. (Cf. Lacks v Lacks, supra.)
The application of these principles of subject matter jurisdiction to the case at bar immediately raises a question as to whether respondent’s objection is in fact addressed to the court’s subject matter jurisdiction. Section 392 itself establishes a simple and unambiguous predicate for subject matter jurisdiction: that the child “for whom an authorized agency is providing foster care, except * * * pursuant to court order under article seven or ten of the family court act * * * has remained in foster care for a *793 continuous period of eighteen months”.[24] Nothing contained in either section 392 or subdivision 2 of section 384-a suggests that the court is somehow ousted of jurisdiction in the facts and circumstances present here, or that the Agency has a special jurisdictional burden when the initial placement was for a definite, as opposed to an indefinite period.
To support the contention as to the lack of subject matter jurisdiction, respondent places reliance not upon the language of section 392, but, instead, upon the provisions of subdivision 2 of section 384-a and seeks, in effect, to treat the latter statute as imposing an implied limitation upon jurisdiction under section 392. In connection with this jurisdictional argument, respondent cites three reported cases. However, as will be seen, none of these cases is dispositive of the issue raised here.
The first case, Matter of Susan F. (59 AD2d 783) arose under article 10 of the Family Court Act. Pursuant to section 1055 (subd [b], par [i]) of the Family Court Act, the initial order of placement in a child abuse or neglect proceeding may not exceed 18 months, and any extensions of placement required further court action. In Susan F., the petition for an extension of placement was not filed until after the initial 18-month period had expired. The Appellate Division held that once a court order of placement under article 10 has expired the court’s jurisdiction is at an end and that there is no legal basis for any continued denial of parental custody. Accordingly, the petition for an extension of placement was dismissed for lack of jurisdiction.
The decision in Matter of Susan F. is not controlling here for a number, of reasons. In the first place, it is significant that where a child is in placement pursuant to section 1055 of the Family Court Act, the sole basis for such placement is a court order which, by statute, is of limited duration. Linking the existence of subject matter jurisdiction to the continued effectiveness of such court thus is consistent with the statutory framework set forth in article 10. By *794 contrast, where a voluntary foster care placement is subject to review pursuant to section 392 of the Social Services Law, such placement ordinarily is based not upon a prior court order, the duration of which is circumscribed by statute, but rather upon a voluntary placement agreement,[25] which is, at least to some extent, subject to private negotiation between the Commissioner and the person seeking placement. Moreover, although section 392, like section 1055 of the Family Court Act, refers to a period of 18 months, it is clear that the court has subject matter jurisdiction over the proceedings for review of foster care under section 392, irrespective of the fact that a petition for such review was filed more than 18 months after the child came into foster care. (Matter of Wayne T.D., 104 Misc 2d 314.) Indeed, to hold otherwise would be to lose sight of the very purpose sought to be served by section 392 proceedings, i.e., “to keep a foster child from becoming lost’ within the foster care system”. (Supra, at pp 316-317.)[26]
A further distinction between the instant proceedings and those before the court in Matter of Susan F. (supra) flows from the different role of the judiciary in voluntary foster care placements, as opposed to placements made pursuant to article 10 of the Family Court Act. The latter, by their very nature, involve the exercise of the State’s authority to intervene in family life, irrespective of parental wishes. Because child protective proceedings brought under article 10 of the act are essentially coercive in nature, strict adherence to statutory requirements relating to the duration of the initial court-ordered placement, and any extensions thereof, is both appropriate and necessary. (Cf. Duchesne v Sugarman, 566 F2d 817.) By contrast, voluntary foster care placements do not depend for their initial validity upon judicial action, and different procedures govern the termination as well as the extension of such placements.
*795 The second case upon which respondent relies, Matter of Wood (94 Misc 2d 964), is also readily distinguishable from the case at bar. In that case, the parent voluntarily placed the child for an indefinite period, rather than, as here, until a specified date. In accordance with the procedures set forth in section 384-a (subd 2, par [a]) governing placements for an indefinite period, the parent in Wood made a written demand for the child’s return. In violation of these procedures, the Commissioner neither returned the child nor sought a court order within 20 days of the parent’s request. Instead, more than 20 days after receiving the parent’s demand, the Commissioner filed a petition under section 392 for a review of the child’s foster care status. The court in Matter of Wood (p 965) held that: “[IJnasmuch as the department failed to comply with the provision of subdivision 2 of section 384-a of the Social Services Law, it is estopped from pursuing the relief it seeks in [the] instant petition under Section 392 of the Social Services Law”. Accordingly, the court on its own motion ordered the immediate return of the child to her mother. An examination of the decision in Wood (supra) makes clear that the case was decided on estoppel, rather than on subject matter jurisdiction grounds. Moreover, in contrast to one instant case, in Wood the Commissioner had not only received a demand for the child’s return, but had also attempted to circumvent the statutory procedures that were there applicable. In the case at bar no such manipulation of court processes has been attempted by the Agency or the Commissioner. Although it is true that the statutory provision applicable to placement for a definite period requires the return of the child, on the date specified, it, unlike the provision at issue in Wood, also permits retention of the child even in the absence of a court order in some cases.
Matter of Edward W. (89 Misc 2d 570), the last case upon which respondent relies, also is inapposite. In that case, the court addressed the question of whether, pursuant to subdivision (c) of section 734 of the Family Court Act, there was subject matter jurisdiction over a juvenile delinquency petition filed more than two months after the matter had been referred for informal adjustment to the Probation *796 Department. Since the statutory provision in question required judicial action to extend the two-month period, and since no such extension had been sought or granted prior to the filing of the petition, the court in Edward W. held that the Family Court was without jurisdiction to hear and determine the matter. Although it is true that Matter of Edward W. (supra) was decided on subject matter jurisdictional grounds, the statutory provisions at issue in that case are quite dissimilar from those before the court in the case at bar. No limiting provision similar to that set forth in subdivision (c) of section 734'of the Family Court Act is found in section 392 of the Social Services Law. Accordingly, respondent’s reliance on Edward W. appears to be misplaced.
It is clear, then, that neither the text of section 392 itself nor the cases cited by respondent, supports the contention that this court lacks subject matter jurisdiction in the instant proceedings. Moreover, any attempt to treat the issue of whether, in fact, the parent was unavailable to care for the child or incapacitated on the date set forth in the agreement, as one imposing an implied limitation on the court’s subject matter jurisdiction, must be rejected for several commonsense reasons.
In this connection, it should be noted that neither the terms “incapacitated” and “unavailable” (both of which appear in section 384-a [subd 2, par (a)] as well as in the placement agreement), nor the term “unable”, which appears only in the agreement, are self-explanatory. Nor, in the context under discussion here, are they capable of precise definition. What is, however, apparent is that in the first instance, the determination as to the existence of these circumstances will be made by the Agency without judicial intervention. A parent who seeks the child’s return in the face of a determination by the Agency of incapacity or unavailability is, of course, free to commence a judicial proceeding for the return of the child,[27] and in the course of such proceedings, the Agency’s decision would be subject to *797 judicial scrutiny. Moreover, when a parent previously deemed incapacitated, unavailable, or otherwise unable to resume custody, notifies the Agency that he or she is no longer unable to care for the child, the agreement makes clear what the Agency’s obligations then are with respect to the child’s return.[28] Finally, pursuant to section 384-a (subd 2, par [a]), fiscal penalties will be imposed if the Agency fails to abide by the provisions of that section, including the provisions as to the return of the child on the date specified in an agreement. Respondent’s argument, if accepted, would mean that even if no such judicial proceeding were ever brought arid even if, as was true in the case at bar, the parent never requested the child’s return until after the filing of the petition for a section 392 review, the parent nonetheless could challenge, in the section 392 proceeding, the Agency’s prior determination as to his or her unavailability or incapacity, and, if successful, could defeat the court’s jurisdiction. Moreover, even if no challenge to the Agency’s previous determination were made by the parent in the section 392 proceeding, the court, on its own motion, presumably would be required to examine this question since the parties cannot waive an objection to the court’s subject matter jurisdiction. (See, e.g., Robinson v Oceanic Steam Nav. Co., supra; Matter of Palmer v Brown, supra.) Similarly, a parent’s long acquiescence in or consent to continued foster care would be irrelevant,[29] and could not obviate the need for judicial determination of the question if it is jurisdictional.
*798 The impropriety of treating the issue raised here as one affecting the court’s subject matter jurisdiction becomes even more clear when the peculiar nature of such jurisdictional issues is considered. Typically, defects in a court’s subject matter jurisdiction are readily apparent on the face of the pleadings, or are otherwise of such nature that they can be identified and disposed of at an early stage in the proceedings. Even when the issue of subject matter jurist diction raises a preliminary factual question, such questions ordinarily are separate and distinct from those that would come before the court during a trial on the merits. If, on the other hand, in the context of a proceeding for the review of a child’s foster care status pursuant to section 392 of the Social Services Law, a court as a threshold matter were required, on its own motion, as well as at the behest of a party, to address the circumstances surrounding the retention of a child in foster care subsequent to the date specified in a voluntary placement agreement, even where no request for the return of the child has been made by a parent, two results would inevitably follow: (1) a consideration of “subject matter jurisdiction” would overlap or even supersede a determination of the merits, and (2) the policy of ensuring review of the foster care status of children who came into foster care via a valid voluntary placement agreement would be defeated.
The facts set forth in the Agency’s affidavit in this case make clear the close relationship between the issue respondent contends is jurisdictional, and the merits. Thus, the affidavit states that both prior and subsequent to the execution of the voluntary placement agreement dated June 24, 1977, it was difficult for the Agency to maintain communication with respondent and to keep abreast of her whereabouts and her living arrangements. In the absence of any request by respondent for the child’s return, it was certainly not unreasonable for the Agency to continue to provide foster care for the child and to entertain doubts as to her capacity or her desire to resume the child’s care. In addition, given the long-standing acquiescence of respondent in continued foster care, it would be inequitable from both the Agency’s and the child’s point of view, to treat as *799 jurisdictional the facts relating to respondent’s unavailability or incapacity more than two years prior to the filing of the instant section 392 petition.
For all the foregoing reasons, the court has concluded that it has subject matter jurisdiction of the instant proceedings pursuant to section 392 of the Social Services Law and that such jurisdiction is in no way dependent upon either prior judicial approval of the placement instrument pursuant to section 358-a of the Social Services Law or a preliminary showing by the Agency or the Commissioner that as of the date specified in the agreement, respondent was unavailable or incapacitated to receive the child.[30] Accordingly, respondent’s motion to dismiss is in all respects denied.

. The prior placement history of the child, insofar as it is relevant to the instant motion, is set forth below.

. The child’s father, George O., is also a respondent in this proceeding. Although both he and the natural mother made clear when they appeared in court in connection with the instant petition that they wished to have the child discharged from foster care, the father neither formally joined in respondent mother’s motion nor submitted any papers in connection therewith. Accordingly, in this decision where the term “respondent” is used, it refers only to the natural mother.
Subsequent to the submission of the instant motion, the court was informed by the Agency’s attorney of respondent mother’s death. Since, however, this motion is addressed to the court’s subject matter jurisdiction, it cannot be treated as moot. (Cf. Robinson v Oceanic Steam Nav. Co., 112 NY 315.)

. The petition for judicial approval, pursuant to section 358-a of the Social Services Law, of the August 20, 1975 voluntary placement agreement was not filed until sometime subsequent to June 14, 1976. On November 10, 1976, the court (Bolin, J.) entered an order approving that agreement, and the transfer of care and custody pursuant thereto, to August 26, 1975, the date on which the child was discharged from foster care to the care of his half-sister’s paternal grandmother.

. For the complete text of contractual option selected by respondent, see infra, at p 790.

. The Agency’s affidavit in opposition to respondent’s motion is silent as to respondent’s failure to request the child’s return, as is respondent’s affidavit in support of the motion. However, since the brief submitted by respondent’s counsel argues that respondent had no obligation to ask for the child’s return, and concedes that respondent “has not asserted formally her rights until this proceeding”, the court, for purposes of this motion, has treated as undisputed the fact that respondent never requested the child’s return until sometime subsequent to the commencement of the present proceeding.

. The Agency’s explanation for the failure to bring a section 358-a proceeding — for which it appears to take responsibility — is difficult to comprehend. Apparently, the Agency was of the view that foster care placement could be resumed pursuant to the August 20, 1975 voluntary placement agreement, notwithstanding (1) the fact that the child had not been in care pursuant to that agreement since August 26,1975 and (2) the fact that the order of November 10, 1976 approving that agreement specifically stated that such approval was granted only to August 26, 1975.

. In the moving papers and briefs in support of the motion, respondent’s counsel also addressed the argument, which he anticipated would be made on behalf of the Commissioner and the Agency, that the court order continuing foster care that was entered on January 10,1979, at the conclusion of the previous section 392 review, should be viewed as creating or reviving subject matter jurisdiction. In this connection, respondent contended that the January 10, 1979 order itself was invalid for the reason that the mother was not given adequate notice of the prior section 392 proceedings, despite the Agency’s alleged knowledge of her address. Accordingly, respondent originally also moved to vacate the court order entered in the previous section 392 proceeding. Since the argument respecting the January 10,1979 order would be of significance only in the event that this court found merit in respondent’s contention that the child’s foster care placement either automatically expired as of August 31, 1977, or was illegal ab initio, and since the “notice” question raised a factual issue requiring a hearing before the Judge who entered the January 10,1979 order, all parties stipulated that so much of respondent’s motion to dismiss as related to the validity of the January 10, 1979 order would be held in abeyance, without prejudice, pending this court’s determination of the other issues raised by respondent.

. Although respondent has treated this argument as a subsidiary one, the court has addressed it at the outset for the reason that it would, if tenable, provide the narrowest ground for decision of the instant motion.

. See n 6 for the Agency’s explanation of why no judicial approval of the June 24, 1977 agreement was ever sought.

. (L 1971, ch 97.) Chapter 97 also repealed a much less detailed version of section 392 that had been enacted in 1970. Although the 1971 version of section 392 has been amended several times, the basic framework of section 392, as established by the 1971 Legislature, has remained substantially the same.

. L 1973, ch 996.

. Like section 392, section 358-a has been amended a number of times. Insofar as is relevant here, however, the basic framework of section 358-a has also remained substantially the same.

. As originally enacted, section 358-a applied only to the voluntary placement of children whose families were recipients of AFDC. In 1978, section 358-a was amended so as to apply to all foster care placements, whether or not they involved AFDC families. (L 1978, ch 78.)

. See, e.g., Matter of Meena B., 107 Misc 2d 684; Matter of David R., 101 Misc 2d 41; Matter of Lydia H., 77 Misc 2d 807.

. Pursuant to section 358-a, petitions must be filed by a social services official within 30 days of the removal of the child from the home. Prior to 1981, if filing occurred more than 30 days after such removal, State reimbursement to the social services district for foster care could be withheld or denied. (See Social Services Law, § 358-a, subd [1].) However, as of April 1,1981, if a petition is filed more than 30 days following the child’s removal from his home, denial of State reimbursement is made mandatory under subdivision (1) of section 358-a.

. (But see Matter of Lydia H., supra.) In Lydia H., the court, in dicta, expressed the view that no transfer of care and custody occurs until the petition brought pursuant to section 358-a has been granted. In view of the plain language of subdivision (3) of section 358-a as well as that contained in the standard voluntary placement agreement itself and in section 384-a, it is clear that although care and custody pursuant to an agreement may ultimately be disapproved in a judicial proceeding, the initial transfer of care and custody occurs pursuant to the agreement, rather than the court order approving such agreement.

. (See text and accompanying n 13). Pursuant to section 601 et seq. of title 42 of the United States Code, States could receive Federal funds for foster care only where children of AFDC families were placed pursuant to a court order. However, section 102 of the Federal Adoption Assistance and Child Welfare Act of 1980 (Pub L 96-272, 94 US Stat 500, 513) eliminates the requirement of a court order for voluntary placements occurring after September 30,1980, and before October 1,1983, and provides for Federal reimbursement so long as judicial review of the voluntary placement occurs within six months of the child’s removal from his home.

. Section 384-a (subd 2, par [a]) also sets forth the procedures to be followed when a parent requests the return of the child prior to the date or event specified, as well as when a parent seeks the return of a child placed under an agreement which does not specify a date or identifiable event for such return.

. The agreement sets forth two options — placement for an indefinite period and placement until a date certain or until a specific happening or event takes place. Respondent selected the second option, which is covered by the contractual language set forth in the text. Like section 384-a (subd 2, par [a]), the agreement also sets forth the procedures to be followed when a parent seeks the return of the child prior to the date or event specified, as well as when a parent seeks the child’s return under an agreement which does not specify a date or identifiable event for such return.

. For the purposes of this motion, the order entered pursuant to the prior section 392 proceeding has been disregarded. (See n 7.)

. The procedures to be followed by the parent when he or she is able to resume care set forth in the contract. (See supra, at p 790.) Unlike the agreement, the statute is silent as to the procedures to be followed when the parent is no longer unavailable or incapacitated to resume care and custody.

. It is unclear whether the addition of the word “unable” in the voluntary placement agreement broadens, in any significant way, the Commissioner’s authority as provided for by the statutory terms “unavailable” and “incapacitated”. If it did so, the question might arise as to whether the contractual provision, insofar as it goes beyond the statutory authorization, is valid. Since, however, the difference between the statutory and the contractual language has not affected the court’s decision on respondent’s motion, the court expresses no view as to the validity of this contractual language.

. See, also, CPLR 3211, subd (a), par 2; subd (e).

. Social Services Law, § 392, subd 1, par (b); subd 2.

. Foster care reviews pursuant to section 392 also are required for the child “whose guardianship and custody have been committed to an authorized agency by an order of a surrogate or judge of the family court or by a surrender instrument”. (Social Services Law, § 392, subd 7, par Id].)

. Pursuant to the Social Services Law, fiscal sanctions will, however, be imposed in the event that section 392 petitions are not filed in a timely fashion. (See Social Services Law, § 153-d.)

. See subdivision (7) of section 358-a of the Social Services Law, quoted, insofar as is relevant here, supra, at p 789.

. See supra, at p 789.

. For a variety of reasons having nothing to do with “unavailability” or “incapacity”, a parent may not in fact wish to terminate foster care on the date specified in the agreement. For example, when a placement agreement was signed, a parent might well have expected to resume care on the date specified in the agreement. Thereafter, the parent, although neither unavailable, incapacitated, nor unable to care for the child, might decide to prolong placement, either because the child’s special needs require an additional period of placement, or because of an unexpected change in the parent’s circumstances. In many instances, a parent will expressly communicate the intention not to resume care or custody to the Agency, and it is difficult to see what purpose would be served by requiring the Agency, in each and every case, to insist either upon the execution of a new placement agreement, or the amendment of the existing one simply is to avoid the problems of proof that might otherwise exist if the issue of actual “incapacity” or “unavailability” on the date specified in the agreement presented a jurisdictional question in the section 392 proceedings.

. The court expresses no view as to whether a different result would follow, on an estoppel or other theory, if the child had come into foster care without the parent’s consent (cf. Duchene v Sugarman, 566 F2d 817) or if the parent had requested the return of the child prior to the filing of the petition for a section 392 review.